**JURY TRIAL DEMANDED**

Hugo N. Gerstl, Attorney Bar No. 37927CA
HUGO N. GERSTL, INC.
25579 Carmel Knolls Drive
Carmel, CA 93923
Telephone: (831) 649-0669
Email: Hugo@gerstllaw.com
Attorney for Plaintiff
.

**UNITED STATES DISTRICT COURT,
EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION**

| | |
|---|---|
| MARIA LORENA ZEVALLOS, aka LORENA BUNYARD,<br>Plaintiff<br><br>Vs.<br><br>CHERYL GRIFFIN, individually and as Trustee of various Trusts of which PAUL STEPHEN BUNYARD is Trustor, co-Trustee and/or Beneficiary, ZOE BUNYARD, individually and as Trustee of various Trusts of which PAUL STEPHEN BUNYARD is Trustor, co-Trustee and/or Beneficiary, JAMES F. McMULLIN, and DOES 1-10, Inclusive,          Defendants. | Case No.<br>**COMPLAINT FOR DAMAGES**<br>Based on Diversity of Citizenship<br>1. Malicious Prosecution<br>2. Intentional interference with Marital rights<br>3. To set aside/amend Guardianship<br>4. Injunctive relief<br>5. Intentional interference with Economic expectancy<br>6. Intentional infliction of mental and Emotonal distress<br>7. Accounting<br>8. Violation of Missouri Uniform Fraudulent Transfers Act (Mufta)<br>9. Legal malpractice<br>10. Unjust enrichment |

1

[   ]

**Preliminary allegations common to all counts**

1. This case is brought in Federal Court on the grounds of diversity of citizenship and amount of claim, 28 USC §1332.  There is complete diversity of citizenship between Plaintiff and Defendants. Plaintiff is a resident citizen of the State of California. Defendants CHERYL GRIFFIN ("GRIFFIN") and JAMES F. McMULLIN ("McMULLIN") are resident citizens of the State of Missouri. Plaintiff is informed and believes and thereon alleges that Defendant ZOE BUNYARD ("ZOE") is a resident of Mexico City, DF, Mexico, New York City, New York, and St. Louis, Missouri.  All DOE defendants are resident citizens of a state other than California. The amount in controversy, exclusive of interest and costs, exceeds $75,000.

2. Pursuant to 28 U.S.C. §1391(b), this action is properly brought in the United States District Court for the Eastern District of Missouri, Eastern Division.

3. Plaintiff does not know the true names or capacities of Defendants DOES 1 through 10, Inclusive.

4. Plaintiff MARIA LORENA ZEVALLOS, also known as LORENA BUNYARD (hereafter "ZEVALLOS" or "Plaintiff") is the legal wife of PAUL STEPHEN BUNYARD (hereafter "Mr. BUNYARD").

5. Defendant CHERYL GRIFFIN (hereafter "GRIFFIN") is the former wife of MR. BUNYARD. Defendant ZOE BUNYARD (hereafter "ZOE") is the daughter of Mr. BUNYARD and GRIFFIN.  Defendant JAMES F. McMULLIN (hereafter "McMULLIN") is an attorney duly licensed to practice law in the State of Missouri.

6. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each defendant was, and now is, the agent, employee and representative of the remaining defendants, and each of them, acting within the course and scope of such agency, employment, and representative capacity with respect to all matters contained herein.

7. Plaintiff is informed and believes and thereon alleges that sometime in the past, the dates of which are unknown, and plaintiff will ask leave to amend this complaint to conform to proof at time of trial, PAUL STEPHEN BUNYARD ("Mr. BUNYARD") acquired an interest as a trustor, trustee, and/or beneficiary of various trusts as a result of the death and inheritance of his father and/or through his own efforts.

[   ]

8. Plaintiff is informed and believes and thereon alleges that at some time at or after the creation of the trusts mentioned above defendants GRIFFIN, ZOE, DOES 1 and 2, and each of them, became or succeeded to the position of Trustee(s) and/or co-Trustees of all or a substantial part of those trusts mentioned in the foregoing paragraph.

9. On or about March 16, 2023, Defendants GRIFFIN, ZOE, DOES 1 and 2, and each of them, brought action number 22-23-PR 00170, entitled *In re Paul Stephen Bunyard* in the St. Louis City Circuit Court, Probate Department, seeking and obtaining Guardianship of Mr. BUNYARD. The Probate Court appointed GRIFFIN and ZOE as Guardians ad Litem on March 16, 2023 and appointed GRIFFIN and ZOE as full guardians on May 30, 2023.

10. On or about May 19, 2023, Defendants GRIFFIN, ZOE, DOES 1 and 2, and each of them, acting through Defendants McMULLIN and DOE 3, brought action number 23SL02254, entitled *In re Paul Bunyard* by Zoe Bunyard and Cheryl Griffin, Petitioners, *vs. Maria Zevallos,* Respondent, in the Circuit Court of St. Louis County, Missouri, seeking to annul the marriage between Plaintiff and Mr. Bunyard. The petition therein and the

action on said petition are known to the parties in the instant action and are incorporated herein by reference.

11. On or about April 20, 2026 the Circuit Court of St. Louis County, the Honorable Robert Heggie, Circuit Judge, rendered Judgment in the case referenced immediately above, **DENYING** the Petition for Annulment. Paragraphs 12-41, immediately below substantially recite the findings and Judgment of the Circuit Court.

12. Mr. BUNYARD was born on January 12, 1949 and is now 77 years of age. His current residence is unknown, but believed to be in or around St. Louis, Missouri. ZEVALLOS was born on December 9, 1959. She is now 66 and resides in Monterey County, California.

13. ZEVALLOS and Mr. BUNYARD have been acquainted with each other for over 23 years. Mr. BUNYARD dated, lived together on-and-off with, and traveled with ZEVALLOS when he lived in California from 2002 to 2012. After Mr. BUNYARD relocated from California to Missouri, he sporadically supported ZEVALLOS. At one point, ZOE and ZEVALLOS went on vacation together with Mr. BUNYARD.

14. At some point in 2018, Mr. BUNYARD relocated back to Missouri to be near his father. He has resided in St. Louis since that time.

5

[ ]

15. Sadly, Mr. BUNYARD began to have some mild cognitive problems, which led him to see Dr. LEE, a neurologist. He scored 29/30 [96.67%] on a mini-mental status examination. He was diagnosed with mild cognitive impairment in 2018 by Dr. LEE. In 2020, Dr. LEE felt that Mr. BUNYARD had mild Alzheimer's disease.

16. Luckily Mr. BUNYARD had remained close to his former wife, GRIFFIN, and she began helping with various household tasks and appointments after 2018. She helped him pay bills and hired a caretaker, Mrs. RALLO, to assist Mr. BUNYARD for several years. Mrs. RALLO indicated that while Mr. BUNYARD could drive, he became more forgetful. He started having more difficulty at the grocery store and restaurants in 2022, Mrs. RALLO knew of ZEVALLOS, and that she had dated Mr. BUNYARD at times.

17. On February 16, 2022, Mr. BUNYARD returned to Dr. LEE. He scored a 24/30 [80%] on a mini-mental status examination and Dr. LEE noted that Mr. BUNYARD had mild forgetfulness. He was diagnosed with Alzheimer's and Dr. LEE felt it was progressing. His dementia was mild.

18. Defendant in the instant case ZOE, who lives at various times in Mexico City, in New York, and in Missouri, saw her father during a trip in

6

[    ]

the summer of 2022 and noticed that he struggled with tasks like packing his suitcase. He was confused at times.

19. ZOE was aware that the relationship between Mr. BUNYARD and ZEVALLOS was on and off again at times. Mr. BUNYARD told ZOE that ZEVALLOS wanted to marry him. ZOE candidly admitted that she was not aware of everything about her father.

20. GRIFFIN, ZOE, and Mrs. RALLO all believed that Mr. BUNYARD lacked the mental capacity to marry in late 2022.

21. ZEVALLOS testified that she had known Mr. BUNYARD for 23 years and that they had always planned on marrying. He supported her at times. She came to visit him in September 2022 and then again in December 2022 when they wed. She described Mr. BUNYARD as happy that they were marrying. She acknowledged that GRIFFIN did not like that Mr. BUNYARD sent ZEVALLOS money on occasion.

22. Mr. BUNYARD did not tell GRIFFIN or ZOE that ZEVALLOS had come back to St. Louis. ZEVALLOS noticed that Mr. BUNYARD had some minor mental difficulties during 2022, but he was able to cook, walk in the neighborhood, and take care of himself.

[   ]

23. ZEVALLOS testified that Mr. BUNYARD trusted her and she took care of him. They went together to see MICHAEL SMALLWOOD, Mr. BUNYARD'S long-time attorney and friend.

24. Mr. SMALLWOOD was Mr. BUNYARD'S attorney and friend for many years. He testified that Mr. BUNYARD grew forgetful at times over the years and was sometimes confused about legal matters. Mr. SMALLWOOD noted that Mr. BUNYARD mentioned ZEVALLOS to him and he had met her once.

25. Mr. SMALLWOOD and Mr. BUNYARD discussed possible marriage to ZEVALLOS on several occasions. Mr. SMALLWOOD testified that Mr. BUNYARD did not want to go into a nursing home and wanted help.

26. In December of 2022, Mr. SMALLWOOD met with Mr. BUNYARD and ZEVALLOS and helped them get a marriage license. He also contacted a Judge to perform the marriage. He attended the marriage ceremony and was a witness.

27. ZEVALLOS and Mr. BUNYARD married on December 21, 2022 at the courthouse. In a recorded video call that day to ZEVALLOS' father,

[    ]

Mr. BUNYARD was very happy, coherent, and quite lucid. He did not appear confused or mentally unsound in any way.

28. GRIFFIN sent an email to ZEVALLOS on December 27, 2022 and offered her "heartfelt congratulations." She also gave ZEVALLOS detailed information on Mr. BUNYARD'S upcoming doctor and dentist appointments. These communications continued for several weeks without any concerns being raised about the marriage.

29. This changed when ZEVALLOS began asking for money from GRIFFIN and ZOE, who are trustees for at least one trust for which Mr. BUNYARD is the beneficiary. ZEVALLOS compounded the mistrust between the parties when she crafted some emails, purportedly from Mr. BUNYARD, to Mr. SMALLWOOD, GRIFFIN, and ZOE with some very specific financial demands.

30. The day after the wedding, ZEVALLOS also arranged and attended with Mr. BUNYARD a meeting with Mr. SMALLWOOD and an estate planning lawyer McMULLIN. Mr. BUNYARD authorized ZEVALLOS

to work with McMULLIN.[1] In a follow-up letter, McMULLIN offered his congratulations to Mr. BUNYARD on his wedding.

31. Mr. BUNYARD and ZEVALLOS resided together for over two months after the marriage. In mid-February 2023, ZEVALLOS returned to California to prepare for her relocation to St. Louis to reside with Mr. BUNYARD.

32. When she returned a few weeks later, there was a letter on Mr. BUNYARD'S door that said she was not permitted to enter and that she had to return any money she had received.  Except for one visit, when she reported that Mr. BUNYARD was a shadow of himself, she has not seen Mr. BUNYARD again.

33. GRIFFIN said that neither she nor ZOE Were able to contact Mr. BUNYARD after the wedding, and they did not see him until February 19, 2023, when ZEVALLOS left. GRIFFIN reported that Mr. BUNYARD had no knowledge of the marriage.

---

[1] Plaintiff paid Mr. McMULLIN $600 by a check from her own account. She asserts that McMULLIN had a conflict of interest when, later, he represented GRIFFIN and ZOE when they filed the Petition to annul the marriage and took other actions to assist GRIIFIN and ZOE in their efforts to hide Mr. BUNYARD'S residence from Plaintiff and effectively blocked her from having any contact with Mr. BUNYARD for over three years.

[   ]

34. On February 21, 2023, ZOE took Mr. BUNYARD to see Dr. LEE. Dr. LEE noted that Mr. BUNYARD was not taking his medication and he had clearly worsened since the 2022 appointment. He scored 19/30 [66.33%] on the mini-mental examination.

35. Dr. LEE speculated that it would be relatively reasonable to assume that Mr. BUNYARD'S mental condition had declined linearly between December of 2022 and February of 2023, when he was examined. It was Dr. LEE'S "educated guess and speculation" that Mr. BUNYARD'S that Mr. BUNYARD'S score on a min-mental exam would be closer to a 19 in December 2022 than a 24.[2]

36. Based on the examination in February of 2023, Dr. LEE prepared an affidavit that Mr. BUNYARD "... is unable to receive and evaluate information to communicate such decisions to such an extent that he ... lacks the capacity to meet essential requirements food, clothing, shelter, safety, or other such that serious physical injury, illness, and disease is likely to occur." Dr. LEE did not believe *on the date of the affidavit* that Mr. BUNYARD had the ability to understand and enter into marriage.[3]

---

[2] Dr. LEE did not see or observe Mr. BUNYARD between February 2022 and February 2023.

[3] See footnote 2, *supra*. Dr. LEE's "opinion" was based entirely on speculation.

[   ]

37. *Dr. LEE did not know whether Mr. BUNYARD had the ability to understand and enter into a marriage in December 2022.[4]*

38. Dr. LEE said, *when asked to assume a series of hypotheticals about Mr. BUNYARD in December of 2022,* that Mr. BUNYARD lacked the capacity to marry at that time. (Emphasis provided).

39. ZOE and GRIFFIN used Dr. LEE's affidavit to seek Guardianship for Mr. BUNYARD and on March 16, 2023 they were appointed as Guardians ad Litem and then full Guardians on May 30, 2023 in the City of St. Louis 22nd Judicial Circuit Probate Court.[5]

40. "In Missouri, compelling considerations of common sense and public policy support the principles that the presumption and validity of a marriage is one of the strongest known to the law," *Forbis v. Forbis*, 274 SW2d 800, 806 (Mo. App. 1955) citing *Maier v. Brock,* 120 SW 1167, 1174

---

[4] Emphasis provided. Taken from ¶21 of the Court's decision in the case referred to in paragraph 12, *supra*),

[5] There was no showing that Plaintiff was provided with notice of any of the hearings or that she was invited or permitted to attend and show cause why GRIFFIN'S and ZOE's petition for Guardianship should be denied. In or about that time, Defendants GRIFFIN and ZOE, represented by Defendant McMULLIN, filed a petition to annul the marriage between Plaintiff and Mr. BUNYARD. There has been no showing that Mr. BUNYARD attended any of the hearings in this matter or that he ever had any knowledge of this filing. What is uncontested is that Defendants secreted Mr. BUNYARD'S whereabouts for over three years and barred Plaintiff from having any contact with her husband. To this day, defendants refuse to advise Plaintiff of Mr. BUNYARD'S whereabouts.

[   ]

(4) (Mo., 1909) and that "every person is presumed to be sane until the contrary is shown." (*Id.,* citations omitted).

41. "The burden of proving the invalidity of a marriage rests upon him who asserts such invalidity, and a marriage will not be declared invalid except upon *clear, cogent, and convincing proof."* (Emphasis provided), *In re Marriage of Burnside, 777 SW2D 660, 664* (Mo. App. S.D., 1989), citing *Forbis, supra*, at 806. "Annulment of a marriage is the exception and not the rule, and must be granted *only upon extraordinary facts*" (Emphasis provided), *Woy v. Woy*, 737 SW2d 769, 774 (Mo. App. W.D., 1987).

42. "In *Forbis, supra*, in wife's separate suit for maintenance. Husband asserted in an amended answer that the marriage of February 12, 1951 was void by reason of wife's alleged insanity at the time of the ceremony, thereby precluding maintenance, 274 SW2d at 803. Evidence showed that prior to the ceremonial marriage, the couple lived together for some fifteen years but that during a bizarre incident in January of 1952, wife repeatedly 'pecked' and then assaulted husband with a butcher's knife. Thereafter, in 1953 wife was adjudicated as a person of unsound mind in probate court and a guardian was appointed. Medical testimony expressed an opinion that wife had become mentally ill much before the alleged

[  ]

assault ('the mixed type schizophrenic') but generally did not have violent tendencies and would be able to carry on in the community without being confined to a hospital." *Forbis v. Forbis*, 274 SW2d 800 (Mo. App. 1955).

43. "Declining to annul the marriage on the grounds charged, the court pointed to the absence of evidence as to the wife's mental capacity at the time of the ceremonial marriage on February 12, 1051, the relevant date. 'For, whether the parties to a contract of marriage are mentally competent *vel non* to enter into that marriage must be determined as of the date of the marriage.'" *Id. at 805,* citing *Henderson v. Ressor*, 141 Mo. App. 540 (1910) and *Westermayer v. Westermayer*, 216 Mo, App. 74, 267 SW 24, 26 (2) (1924), *Id.*

44. "The court explained, 'Evidence concerning the mental condition of either party prior or subsequent to [marriage date] is of probative value only insofar as it raises a reasonable inference as to the mental condition of such party *at the time of the marriage* (Emphasis supplied)... the general rule is that proof of *present existence of a condition* standing alone is not presumptive evidence that the same condition existed heretofore (Emphasis supplied)  ... It being a matter of common knowledge that

insanity may be transient [Smoot on Law of Insanity, Section 16(c), p. 9]"

*Forbis v. Forbis*, 274 SW2d 800 (Mo. App. 1955)."

45. "Here there is a remarkable degree of agreement on the basic facts of the case. The witnesses were generally credible in their testimony about what they saw and observed. Petitioners GRIFFIN and ZOE and Respondent ZEVALLOS disagree though on the ultimate question: was Mr. BUNYARD mentally competent to enter into marriage on December 27 [*sic*, should be December 21], 2022. *The court finds that he was mentally competent on that day and denies the petition to annul the marriage*. (Emphasis provided).

46. *"Mr. BUNYARD's recorded video call shows a man quite pleased with himself, confident and happy with the decision. The aid and assistance of his friend in helping with the logistics of the marriage and the congratulations and the well wishes of Griffin and McMullin all show that no one had any concerns about the mental capacity of Mr. BUNYARD at the time of the marriage. Only when ZEVALLOS raised financial concerns, did the claims of mental incompetency arise."* (Emphasis provided).

47. "For the above reasons, the presumption of the validity and the inability of Petitioners to meet the clear, cogent, and convincing burden of

15

[   ]

proof, the court orders, adjudges, and decrees that the Petition for annulment is denied." [6]

48. "Petitioners' claim for money damages against ZEVALLOS is denied. She would have been much wiser to avoid sudden financial moves and making financial demands at the onset of the marriage. This might have avoided the race to the Probate Court that ensued. But while the financial transactions were different from before the marriage, the court cannot say that they were improper based on the evidence presented. Petitioners' claim for attorney fees is denied, since they did not prevail in this case."

## FIRST COUNT (Malicious prosecution)

49. Plaintiff repleads and incorporates herein by reference paragraphs 1 through 48 of her preliminary allegations.

---

[6] California law is identical. When a marriage is shown in evidence, whether regular or irregular, and whatever the form of proof, the law raises a strong presumption of its legality. *Freeman S.S. Co. v. Pillsbury,* 172 F.2d 321, 323-324 (9th Cir. 1949). Similarly, the presumption of validity of a first marriage is displaced by the presumption of validity of a second marriage where such occurs. *United States v. Marlow*, 235 F.2d 366, 368 (5th Cir. 1956); *Estate of Vinson* 1963) 212 Cal.App.2d 543, 546); *Estate of Shank* (1957) 154 Cal.App.2d 808, 812. "Accordingly, this Court finds that Angela Spies was the lawful wife of Julian Spies at the time of his death, and is therefore entitled to death benefits under the Act as his 'surviving wife." - *Holland Am. Ins. Co. v. Rogers*, 313 F. Supp. 314, 317 (N.D. Cal. 1970). There is a strong presumption that the second marriage is valid in the absence of positive evidence to the contrary, *Rediker v. Rediker* (1950) 35 Cal. 2d 796, 807–08. "The state has a rightful and legitimate concern with the marital status of the parties to the action, ... and the fraud relied upon to secure a termination of the existing status must be such fraud as directly affects the marriage relationship and not merely such fraud as would be sufficient to rescind an ordinary civil contract. Because public policy strongly favors marriage, the fraud must be shown by *clear and convincing evidence*." - *In re Marriage of Ankola*, (2020) 53 Cal. App. 5th 369, 389. (Emphasis provided).

50. In the instant case, Cause No. 23SL-DR02254 was commenced by or at the direction of the defendants GRIFFIN, ZOE, JAMES McMULLIN, and DOES 1 through 3, and each of them, that was pursued to a legal termination in the Plaintiff's favor.

51. Said defendants, and each of them brought Cause No. 23SL-DR02254 without probable cause.

52. Said defendants, and each of them, initiated the prior action with malice, in that:

a. Defendants GRIFFIN and ZOE knew of the relationship between Plaintiff for years and never objected to it.

b. Defendants GRIFFIN, ZOE, and McMULLIN knew of the marriage between Plaintiff and Mr. BUNYARD shortly after it took place and GRIFFIN and McMULLIN actually extended written congratulations to Plaintiff and Mr. BUNYARD after their marriage; and GRIFFIN provided Plaintiff with information concerning Mr. BUNYARD'S medical and dental appointments after the marriage.

c. When they brought Mr. BUNYARD to Dr. LEE in February 2023, they well aware that Dr. LEE had not seen Mr. BUNYARD in at

17

[   ]

least a year, and that Mr. BUNYARD was competent when he saw Dr. LEE in February 2022.

d. Defendants GRIFFIN and ZOE blocked Plaintiff from entering the home he shared with Mr. BUNYARD after their marriage and refused to reveal Mr. BUNYARD'S location for more than three years and still fail and refuse to disclose his whereabouts to the Plaintiff.

e. Plaintiff is informed and believes and thereon alleges that Defendants GRIFFIN and ZOE have willfully, deliberately, and maliciously failed to disclose any of Mr. BUNYARD'S assets or liabilities to Plaintiff for more than three years and have converted all or a substantial portion of Mr. BUNYARD'S assets to their own use.

f. Defendant McMULLIN willfully, deliberately, and with full knowledge of his conflict of interest, represented Defendants GRIFFIN and ZOE in Cause No. 23SL-DR02254 after he had met with Mr. BUNYARD and the Plaintiff for Estate Planning purposes and Plaintiff had paid McMULLIN with her own funds and Mr. BUNYARD had authorized Defendant McMULLIN to share his Estate Planning information with Plaintiff, who was his wife.

g. Defendants, and each of them, they brought action number 23SL-DR02254 contending that Mr. BUNYARD was incompetent some three months after the marriage and after they had earlier recognized the validity of the marriage and actually congratulated Plaintiff and Mr. BUNYARD.

53. As a direct and proximate result of Defendants' wrongful acts, as aforesaid, as well as their malicious prosecution of 23SL-DR02254 and Defendants' GRIFFIN's and ZOE BUNYARD'S malicious prosecution of Case No. 23-22PR00170 in the St. Louis City Circuit Court, Plaintiff has suffered and still suffers great and grievous mental and emotional suffering, loss of consortium, deprivation of her marital and conjugal rights with her husband, Mr. BUNYARD, economic and financial deprivation, humiliation, obloquy, and injury to her reputation, all to her general damages in such sums in excess of $75,000 as shall be proved a the time of trial.

54. As a further direct and proximate result of Defendants' wrongful acts as aforesaid, Plaintiff has been forced to expend attorney's fees, costs, and travel expenses in a sum in excess of $75,000, the precise amount of which has not been ascertained, and Plaintiff will ask leave to amend this complaint to conform to proof at time of trial.

[   ]

55. As a further direct and proximate result of defendants' wrongful acts as aforesaid, plaintiff has been, and continues to be, deprived of her support and maintenance from her husband, Mr. BUNYARD in such amounts as shall be subject to proof at time of trial.

56. The malicious commencement of a civil proceeding is actionable because it harms the individual against whom the claim is made, and also because it threatens the efficient administration of justice. The individual is harmed because she is compelled to defend against a fabricated claim which not only subjects her to the panoply of psychological pressures most civil defendants suffer, but also to the additional stress of attempting to resist a suit commenced out of spite or ill will, often magnified by slanderous allegations in the pleadings. In recognition of the wrong done the victim of such a tort, settled law permits her to recover the cost of defending the prior action including reasonable attorney's fees, compensation for injury to her reputation or impairment of her social and business standing in the community, and for mental or emotional distress.

57. Defendants' wrongful acts were malicious, fraudulent, oppressive, and made with conscious disregard of Plaintiff's rights. By virtue thereof,

[   ]

Plaintiff ought to recover and Defendants ought to suffer exemplary and punitive damages commensurate with their wealth.

**SECOND COUNT: (Intentional Interference with Marital Rights: Against Defendants GRIFFIN, ZOE, and DOES 1 and 2)**

58. Plaintiff repleads and incorporates herein by reference paragraphs 1 through 48 of her preliminary allegations.

59. Plaintiff and PAUL STEPHEN BUNYARD were formally and legally married on or about December 21, 2022 and ever since that time have been and still are husband and wife.

60. Commencing in or about March 2023 and continuing to the present date, defendants GRIFFIN and ZOE willfully, maliciously, and intentionally interfered with and still interfere with Plaintiff's marital rights with Mr. BUNYARD by the following acts:

a) Concealing Mr. Bunyard's whereabouts from plaintiff

b)  Excluding Plaintiff from the family home

c) Abusing their legal authority by securing guardianship and power of attorney over Mr. BUNYARD when they knew, or in the exercise of reasonable care should have known, that Mr. BUNYARD had validly given Power of Attorney to the Plaintiff in or about February 2023.

[   ]

d) Concealing Mr. BUNYARD'S assets, whether by way of Trusts or otherwise, from Mr. BUNYARD and from the Plaintiff.

e) Interference with marital and conjugal rights between Mr. BUNYARD and the Plaintiff.

f) Misuse of Mr. BUNYARD'S vulnerability and elder status and lying to Mr. BUNYARD to conceal the Plaintiff's whereabouts from him.

g) Isolation of Mr. BUNYARD from the Plaintiff, his legal, legitimate, and unseparated wife.

h) Cutting off communication between Mr. BUNYARD and Plaintiff.

i) Plaintiff is informed and believes and thereon alleges that Defendants changed locks on the parties' door, changed Mr. BUNYARD'S phone number, installed cameras and extensive security systems around the property, placed signs outside the residence, sent a letter dated February 21, 2023 from Attorney McMullin instructing Plaintiff not to return and claiming that Mr. BUNYARD wanted an annulment, and changed Mr. BUNYARD'S email and internet connections to interfere with Plaintiff residing and communicating with Mr. BUNYARD

j) Controlling Mr. BUNYARD'S access to the Plaintiff.

22

[   ]

l) Exercising psychological pressure to coerce Mr. BUNYARD not to attempt to contact the Plaintiff, and wrongfully and falsely convincing Mr. BUNYARD that he had never legally married the Plaintiff and that she had abandoned him.

m) Removing Mr. BUNYARD from any contact with the Plaintiff.

61. Plaintiff repleads and incorporates herein by reference Paragraphs 53-55 of her first cause of action.

62. Defendants' wrongful acts were malicious, fraudulent, oppressive, and made with conscious disregard of Plaintiff's rights. By virtue thereof, Plaintiff ought to recover and Defendants ought to suffer exemplary and punitive damages commensurate with their wealth.

**THIRD COUNT (To set aside or amend Guardianship proceedings)**
**(Against GRIFFIN, ZOE, and DOES 1-2)**

63. Plaintiff repleads and incorporates herein by reference Paragraphs 1-48 of her Preliminary allegations.

64. On or about March 16, 2023, Defendants GRIFFIN, ZOE, DOES 1-4, each of them, filed action No. 22-23 PR00170 in St. Louis City Circuit Court Probate Department, seeking, and thereafter obtaining Guardianship over Mr. BUNYARD.

23

[    ]

65. Plaintiff was not afforded a reasonable opportunity to respond to the petition for Guardianship. She possessed evidence and provided communication from her first attorney to GRIFFIN and ZOE prior to any court action on the part of GRIFFIN and ZOE that an independent attorney had drafted – and Mr. BUNYARD had executed – a valid estate plan, including Power of Attorney in February 2023 at a time when the independent attorney believed Mr. BUNYARD was competent.

66. However, on or about May 19, 2023, GRIFFIN, ZOE, and McMULLIN had filed action No, 23 SL – DR02254 to annul Plaintiff's marriage to Mr. BUNYARD, which effectively blocked Plaintiff's ability to contest the Guardianship.

67. The Judgment of the Circuit Court in 23 SL – DR02254 affirmed the marriage between Plaintiff and Mr. BUNYARD and denied GRIFFIN'S, ZOE'S, and McMULLIN'S action to annul the marriage.

68. That ruling effectively negated the St. Louis City Circuit Court's ruling, or, alternatively, permitted Plaintiff to revisit the Guardianship ruling and to request that if a Guardian were to be appointed for Mr. BUNYARD, Plaintiff would be the appropriate candidate by virtue of the proximity of her relationship to Mr. BUNYARD.

[   ]

69. Given the diversity of citizenship between the parties, this action is properly commenced in this Court and Plaintiff will properly act to remove the Guardianship action, including subsequent actions pertaining thereto, from the St. Louis City Circuit Probate Court to this Court.

**FOURTH COUNT:**
**(Injunctive relief – against Defendants GRIFFIN, ZOE and DOES1-2)**

70. Plaintiff repleads and incorporates herein by reference paragraphs 1-48 of her preliminary allegations and paragraphs 59 and 60 of her Second and Third Count.

71. On and after March 1, 2023, defendants commenced to do and perform the following acts in total derogation of plaintiff's rights:

a) Concealing Mr. Bunyard's whereabouts from plaintiff

b)  Excluding Plaintiff from the family home

c) Concealing Mr. BUNYARD'S assets, whether by way of Trusts or otherwise, from Mr. BUNYARD and from the Plaintiff.

d) Interfering with marital and conjugal rights between Mr. BUNYARD and the Plaintiff.

f)  Isolation of Mr. BUNYARD from the Plaintiff, his legal, legitimate, and unseparated wife.

g)  Cutting off communication between Mr. BUNYARD and Plaintiff.

25

[   ]

h)  Controlling Mr. BUNYARD'S access to the Plaintiff.

i)  Exercising psychological pressure to coerce Mr. BUNYARD not to attempt to contact the Plaintiff, and wrongfully and falsely convincing Mr. BUNYARD that he had never legally married the Plaintiff and that she had abandoned him.

j) Removing Mr. BUNYARD from any contact with the Plaintiff.

72. Defendants have threatened to, and will, unless restrained and enjoined by this Court, continue to do and perform such acts as are described in paragraph 71, all of which acts are obnoxious to plaintiff's rights.

73. Plaintiff request this Court issue a preliminary injunction, and permanent injunction restraining and enjoining defendants, their agents, employees, representatives, and anyone acting with, for, or in concert with them, from doing or continuing to do any of those acts described in paragraph 71.

74.  Plaintiff requests that this Court issue a preliminary and permanent injunction commanding the defendants, their agents, employees, representatives, and anyone acting with, for, or in concert with them to:

a) Disclose Mr. BUNYARD'S whereabouts to the Plaintiff

b) Allow Plaintiff direct and continuing access to Mr. BUNYARD

[  ]

c) Disclose to the Plaintiff each and every asset of Mr. BUNYARD, whether held in trust on his behalf, or free of trust.

d) Disclose everything of value which they have taken or received from Mr. BUNYARD at any time during the past ten years.

75.  Plaintiff has no plain, speedy, or adequate remedy in the ordinary course of law if such injunction is not granted in that Defendants have willfully, deliberately, and maliciously continued to do and perform those acts set forth hereinabove and will continue to deny Plaintiff access to her lawfully wedded and unseparated husband, and Plaintiff cannot attempt any act of force or other unlawful act to compel them to act in accordance with Plaintiff's request without a Court order enjoining them as aforesaid

76. Plaintiff will suffer irreparable injury and damage if said injunction is not granted in that she will be denied her conjugal rights and all natural and legal rights that flow therefrom, including, but not limited to, consortium, care, companionship, and love, and monetary damages alone would be wholly insufficient to afford her adequate or compensable relief.

**FIFTH COUNT:**
**(Intentional interference with economic expectancy – Against GRIFFIN, ZOE, and DOES 1-2)**

[   ]

77. Plaintiff repleads and incorporates herein paragraphs 1 through 48 of her preliminary allegations and each and every paragraph of her first, second, third, and fourth count.

78. By virtue of Plaintiff's marriage to Mr. BUNYARD, she acquired the probability, if not the certainty, of future economic benefit, including, but not limited to

a) Financial support from her husband by virtue of their marriage. The exact amount of such support is presently unascertained and is subject to proof at time of trial.

b) Economic expectancy in the event of her husband's death, whether by way of a will or trust, or by way of her taking ½ or 1/3 of his estate by voluntarily taking against any will of her husband. The exact amount of such economic expectancy is presently unascertained and is subject to proof at time of trial.

c) The accretions, increases, interest, income, and other enhancements of his assets. The exact amount of such enhancement to her husband's assets is presently unascertained and is subject to proof at time of trial.

[   ]

79. Defendants GRIFFIN, ZOE, McMULLIN, DOES 1 through 3, and each of them, were aware of Plaintiff's relationship with her husband and of the economic expectation Plaintiff had in reliance thereof.

80. By those acts described hereinabove, defendants, and each of them, intentionally, knowingly, and willfully committed wrongful acts designed to disrupt the economic relationship described hereinabove,

81. By virtue of defendants' wrongful acts as aforesaid, there was – and continues to be - actual disruption of the economic relationship between Plaintiff and Mr. Bunyard.

82. As a direct and proximate result of defendants' wrongful acts as aforesaid, Plaintiff as suffered and continues to suffer those injuries and damages more particularly described hereinabove, which paragraphs are incorporated herein by reference as though fully set forth.

83. Defendants' wrongful acts were malicious, fraudulent, oppressive, and made with conscious disregard of Plaintiff's rights. By virtue thereof, Plaintiff ought to recover and Defendants ought to suffer exemplary and punitive damages commensurate with their wealth.

**SIXTH COUNT**
**(Intentional infliction of mental and emotional distress – against GRIFFIN, ZOE, McMULLIN and DOES 1-3)**

29

[   ]

84. Plaintiff repleads and incorporates herein by reference paragraphs 1 through 48 of her preliminary allegations and each and every allegation contained in her first, second, third, fourth, and fifth counts.

85. Between March 2023 and the present date, Defendants GRIFFIN, ZOE BUNYARD, and McMULLIN engaged in a program of extreme and outrageous conduct as more particularly described hereinabove, with the intention of causing, or reckless disregard of the probability of causing, emotional distress. Such conduct should not be tolerated or suffered within the bounds of civilized society.

86.  As a direct, proximate, and foreseeable result of Defendants' conduct as aforesaid, Plaintiff has suffered and continues to suffer severe and extreme emotional distress as set forth hereinabove.

87.  The actual and proximate causation of the emotional distress was directly caused by defendants' outrageous conduct.

88. Defendants' wrongful acts were malicious, fraudulent, oppressive, and made with conscious disregard of Plaintiff's rights. By virtue thereof, Plaintiff ought to recover and Defendants ought to suffer exemplary and punitive damages commensurate with their wealth.

**SEVENTH COUNT (Accounting – Against GRIFFIN, ZOE and DOES)**

[   ]

89. Plaintiff repleads and incorporates herein by reference paragraphs 1 through 48 of her preliminary allegations and each and every allegation of her first, second, third, fourth, fifth, and sixth counts.

90. Sometime in the past, the dates of which are unknown, and plaintiff will ask leave to amend this complaint to conform to proof at time of trial, PAUL STEPHEN BUNYARD acquired an interest as a trustor, trustee, and/or beneficiary of various trusts as a result of the death of and inheritance from his father and/or through his own efforts.

91. Plaintiff is informed and believes and thereon alleges that at some time at or after the creation of the trusts mentioned above defendants GRIFFIN, ZOE, DOES 1 and 2, and each of them, became or succeeded to the position of Trustee(s) and/or co-Trustees of all or a substantial part of those trusts mentioned in the foregoing paragraph.

92. A relationship exists between Plaintiff and Mr. BUNYARD as husband and wife, wherein and whereby Plaintiff has an interest in the value of all of Mr. BUNYARD'S assets to the extent provided by the marital laws of the State of Missouri.

[   ]

93. As such, that relationship exists between GRIFFIN and ZOE as Trustees and Managers of Mr. BUNYARD'S assets and estate on the one hand, and Plaintiff on the other.

94. That relationship requires an accounting from GRIFFIN and ZOE on the one hand, and Plaintiff and her husband, Mr. BUNYARD on the other.

95. Some balance is due to the Plaintiff and to Mr. BUNYARD that can only be ascertained by an accounting.

96. An action for an accounting has been characterized as a means of discovery. The purpose of the accounting is, in part, to discover what, if any, sums are owed to the plaintiff, and an accounting may be used as a discovery device. This characterization is consistent with the idea that a plaintiff seeking an accounting cannot allege the right to recover a sum certain because he or she lacks the information necessary to determine the precise amount that may be due. The plaintiff's lack of knowledge drives the need for discovery and the fact that the gap can be filled via discovery implies the information is within the control of the defendant. In other words, the defendant in an accounting action possesses information unknown to the plaintiff that is relevant for the computation of money owed.

32

[   ]

97. Plaintiff requests that the Court appoint Barry Dolowich, CPA, Member, American Institute of Certified Public Accountants, Accredited in Business Valuation ABV issued by AICPA, Certified in Financial Forensics CFF issued by AICPA, who possesses Broad accounting, tax, finance and management experience at all levels of business and industry, ·experience at developing and expanding existing banking relationships, forensic accounting, and Business valuation, and who is currently or has been licensed as a CPA in California, New York, and Florida to be the designated accountant to perform the accounting requested in this Count.

## EIGHTH COUNT:
### (Violation of Missouri's Uniform Fraudulent Transfers Act – MUFTA – Against GRIFFIN, ZOE, McMULLIN, and DOES 1-3)

98. Plaintiff repleads and incorporates herein by reference paragraphs 1-48 of her preliminary allegations and each and every paragraph of her first, second, third, fourth, fifth, sixth, and seventh counts.

99. Plaintiff is informed and believes and thereon alleges that at some point in the past, the exact date or dates of which are unknown to Plaintiff, who will ask leave to amend this complaint to conform to proof at time of trial, defendants GRIFFIN, ZOE, McMULLIN, DOES 1 through 3, and each of them, made a transfer from PAUL STEPHEN BUNYARD to themselves or to a series of Trusts wherein, as Trustees and/or co-Trustees they

retained and presently retain control over substantial assets owned or acquired by PAUL STEPHEN BUNYARD as a result of inheritance from his deceased father or as a result of his own efforts.

100. Such transfers were accomplished by said defendants, and each of them, by actual or constructive fraud with intent to hinder, delay, or defraud any creditor. Mr. BUNYARD and Plaintiff are creditors of defendants, individually or as Trustees and/or co-Trustees of the various Trusts designated above.

101. To establish actual fraud, Plaintiff must show that a transfer was made "with actual intent to hinder, delay, or defraud any creditor of the debtor." §428.024.1(1).

102. There rarely is direct evidence of actual intent, but it has always been held that fraud may be proven by circumstantial evidence, if that evidence affords a clear inference of fraud, and amounts to more than a mere suspicion or conjecture. *Konopasek v. Konopasek*, 683 S.W.3d 250, 258 (Mo. 2023).

103. A concurrence of circumstances, or of 'badges of fraud,' may warrant an inference of fraud, although each such circumstance may, in itself, be trivial. The badges of fraud are recognized evidentiary facts a

34

[   ]

plaintiff may use to establish the ultimate fact—the debtor's actual intent to hinder, delay, or defraud creditors. The Supreme Court of Missouri has recognized several facts or circumstances as indicia or 'badges' of fraud, including:

(a) A conveyance in anticipation of suit;
(b) A conveyance to near relatives;
(c) Inadequacy of consideration;
(d) Unusual clauses in instruments or unusual methods of transacting business;
(e) Transfer of all or nearly all of a debtor's property;
(f) Insolvency;
(g) Retention of possession by the debtor;
(h) The failure to produce available explanatory or rebutting evidence when the circumstances attending the transfer are suspicious.

104. The MUFTA also codifies a "non-exhaustive list of such 'factors' that 'may' be considered in determining a debtor's actual intent." (Mo. Stat. Ann. §428.024.2). Those factors include:

(a) Whether the transfer or obligation was to an insider.
(b) Whether the debtor retained possession or control of the property transferred after the transfer.
(c) Whether the transfer or obligation was disclosed or concealed.
(d) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
(e) Whether the transfer was of substantially all the debtor's assets.
(f) Whether the debtor absconded.
(g) Whether the debtor removed or concealed assets.
(h) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

35

[   ]

(i) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(j) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

(k) Whether the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor.

105. Under the MUFTA, "a debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." §428.014.1.

106. A debtor who is generally not paying his debts as they become due is presumed to be insolvent. §428.014.2.

107. As for constructive fraud, Plaintiff must show the debtor made a transfer without receiving a "reasonably equivalent value in exchange for the transfer or obligation." §428.024.1(2). In addition, Plaintiff must show that the debtor either (1) "was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction," or (2) "intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." - *Aware Prods. LLC v. Epicure Med. LLC*, 780 F. Supp. 3d 837, 864–65 (E.D. Mo. 2025)

[   ]

108. Defendants secreted funds justifiably belonging to Mr. BUNYARD in order to deprive him and Plaintiff, his lawfully wedded wife, of assets to which they would be entitled without valid (or any substantial) consideration therefor.

## NINTH COUNT (Legal Malpractice Arising out of Conflict of Interest - Against Defendant McMullin and DOE 3)

109. Plaintiff repleads and incorporates herein by reference paragraphs 1-48 of her preliminary allegations.

110. The elements of a legal malpractice action are: 1) an attorney-client relationship; 2) defendant acted negligently or in breach of contract; 3) defendant's acts were the proximate cause of the plaintiff's damages; and 4) but for defendant's conduct the plaintiff would have succeeded in prosecution of their underlying claim.- *Juan v. Growe*, 547 S.W.3d 585, 591 (Mo. App. E.D. 2018); *Nail v. Husch Blackwell Sanders, LLP*, 436 S.W.3d 556, 561 (Mo. En banc 2014); *City of St. Louis v. Bertels*, 699 S.W.3d 221, 228 (Mo. Ct. App. 2024).

111. In the instant case, there was an attorney-client relationship between Defendant McMULLIN on the one hand, and Plaintiff and her husband Mr.BUNYARD on the other.

37

[   ]

112. Defendant McMULLIN'S acts were the direct and proximate cause of general and special damages to Plaintiff as more particularly set forth hereinabove.

113. Defendant acted negligently or in breach of contract in that he thereafter represented Defendants GRIFFIN and ZOE in an action against Plaintiff relating to the Estate Plan which he formulated for Plaintiff, and Plaintiff and Mr. BUNYARD in an action to annul the marriage and, by so doing, void the Estate Plan which Plaintiff and her husband, Mr.BUNYARD had paid McMULLIN to execute.

114. But for defendant's conduct the plaintiff would have avoided all of the damages set forth above.

115. Further, Plaintiff is certain to suffer damages consisting of attorneys' fees and costs in the instant case as well as the potential for increased damages arising from general and special damages set forth hereinabove.

**TENTH COUNT: Unjust enrichment – against all Defendants**

116. Plaintiff repleads and incorporates herein by reference each and every paragraph of her preliminary allegations and each and every allegation contained in her first, second, third, fourth, fifth, sixth, seventh,

38

[   ]

and eighth counts, not by way of selecting a specific cause of action, but by way of setting forth a series of acts and transactions justifying the relief set forth herein.

117. By virtue of the premises, defendants will be unjustly enriched if their conduct is tolerated by the Court in such sums as shall be proved in Court.

118. In order for Plaintiff to succeed in a count based on unjust enrichment, the elements which plaintiff must plead and prove are: 1) That a benefit was conferred upon the defendant by the plaintiff; 2) appreciation of such benefit; and 3) that under the circumstances, acceptance and retention of the benefit without repayment would be inequitable. - *Vogt v. Walls Real Est. Co.,* 727 S.W.3d 813, 820 (Mo. Ct. App. 2025)

119. Because of their wrongful acts, defendants, and each of them, hold that property alleged hereinabove in constructive trust for the use and benefit of the plaintiff; and this court, in the exercise of its equitable jurisdiction, should so order.

WHEREFORE, Plaintiff prays for judgment and relief against defendants, and each of them:

1. For all general damages set forth in the body of the complaint, according to proof.

[    ]

2. For all special damages set forth in the body of the complaint, according to proof.

3. That this Court remove the matter of the Guardianship of Paul Stephen Bunyard, 22-23 PR 00170, St. Louis City Circuit Court (Probate) to this Court for further adjudication, and that upon assumption of jurisdiction this Court set aside the Guardianship of Paul Stephen Bunyard in favor of Defendants GRIFFIN and ZOE, given the judgment of the Circuit Court in 23 SL – DR 02254, and make a new and different ruling appointing Plaintiff as Guardian, should such appointment be necessary, or, alternatively, issuing such further Orders as shall be just.

4. For injunctive relief as set forth in the fourth count.

5. For reasonable attorney's fees and costs incurred in the defense of Defendants' Petition to Annul Plaintiff's marriage to Mr. BUNYARD.

6. For exemplary and punitive damages commensurate with defendants' wealth.

7. For an accounting of all of Mr. BUNYARDS assets, whether by way of trusts created by his deceased father, by way of Trusts created by or for the benefit of Mr. BUNYARD.

[   ]

8. For disgorgement of all of Mr. BUNYARD'S or his trusts' assets which were wrongfully converted or interfered with by the defendants, and each of them.

9. For a finding that Defendants violated the MUFTA and must disgorge whatever monies they received as a result thereof.

10. For damages against Defendant McMULLIN for Legal Malpractice based on conflict of interest, according to proof.

11. For a decree that defendants, and each of them, were unjustly enriched by their wrongful acts and that they hold all such sums as they received therefor in constructive Trust for the benefit of Plaintiff and Mr. BUNYARD.

12. For attorneys fees and costs incurred herein, and

13. For such the relief as shall be just and equitable, fair and reasonable, and meet in the premises.

**PLAINTIFF REQUESTS AND DEMANDS TRIAL BY JURY
AS TO ALL MATTERS CONTAINED IN THIS COMPLAINT.**

Dated May 21, 2026                                 Respectfully submitted,

*Hugo N. Gerstl*

HUGO N. GERSTL, Attorney Bar No. 37927CA
Hugo N. Gerstl, Inc.; 5579 Carmel Knolls Drive
Carmel, CA 93923; Telephone: 831-649-0669
Email: Hugo@gerstllaw.com; Attorney for Plaintiff

41

[   ]